IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

AUGUST 1998 SESSION

FILED

October 19, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | NO. 01C01-9801-CC-00025 |
| Appellee, | ) | |
| | ) | GILES COUNTY |
| VS. | ) | |
| | ) | HON. ROBERT L. JONES, |
| JIMMY LEGG, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Aggravated Kidnapping) |

FOR THE APPELLANT:

**RAYMOND W. FRALEY, JR.**
**JOHNNY D. HILL, JR.**
205 East Market Street
P. O. Box 572
Fayetteville, TN 37334-0572

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General and Reporter

**LISA A. NAYLOR**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**T. MICHAEL BOTTOMS**
District Attorney General

**ROBERT C. SANDERS**
Assistant District Attorney General
10 Public Square
P. O. Box 1619
Columbia, TN 38402-1619

OPINION FILED: _____

CONVICTION REDUCED TO FALSE IMPRISONMENT

JOE G. RILEY,
JUDGE

**O P I N I O N**

The defendant, Jimmy Legg, was convicted by a Giles County jury of aggravated kidnapping and sentenced by the trial court to a term of eight (8) years in the Department of Correction.  On appeal, he raises the following issues for our review:

> 1.    whether the evidence was sufficient to support the verdict;
>
> 2.    whether prosecutorial misconduct deprived him of a fair trial;
>
> 3.    whether the trial court erred in disallowing defense counsel to question the alleged victim as to bias;
>
> 4.    whether the trial court erred in permitting the introduction of certain medical records;
>
> 5.    whether the trial court erred by instructing the jury to disregard a portion of defense counsel's final argument; and
>
> 6.    whether the trial court erred in failing to charge aggravated assault and simple assault as lesser included offenses.

After a careful review of the record, we reduce the conviction to false imprisonment.

**FACTS**

In October of 1993, defendant's wife, the victim, was separated from the defendant.  The victim resided with her daughter across the Tennessee line in Athens, Alabama.   The defendant maintained a residence in Giles County, Tennessee.

The defendant arrived at the victim's Alabama residence at approximately 8:00 a. m. on October 19.  Upon being reassured by the defendant that nothing was going to happen to her and that the defendant just wanted to talk, the victim and their daughter got in the truck with the defendant.  Defendant drove a short distance

2

to the barn and asked the daughter to get out of the truck. The victim also tried to exit the vehicle but was pulled back by the defendant. The defendant drove off with the victim.

While driving around, the defendant questioned the victim as to "what [she] had been doing." Whenever she would try to answer him, the defendant struck her with his fist. The defendant also threatened her with a gun and told her that he was going to kill her.

The defendant drove the back roads of Alabama. At some point the defendant stopped for gasoline. The defendant eventually crossed into Tennessee and secured a motel room at the Sands Motel in Giles County. The victim testified that the defendant did not beat her while at the motel. The victim did not realize she was in Tennessee until the next morning, October 20. The victim's face was swollen and bruised extensively about her eyes.

On October 20 someone at the motel called the Giles County Sheriff's Department concerning the condition of the victim. Upon seeing the officers, the defendant told the victim to enter the bathroom and be quiet. One of the officers spoke with the victim through the bathroom door which was partially open. The victim refused to come out and insisted her facial injuries were the result of an automobile accident and a subsequent fall. She refused to go with the officers and repeatedly asked them to leave. The victim testified that she did not leave with the officers because she feared the defendant would shoot her and/or the officers.

The officers inspected the inside of the truck and found numerous spots of blood. The officers found no evidence that the truck had been involved in any kind of accident. Nevertheless, the officers left the motel.

3

The defendant decided to pay for another night's lodging at the motel. He informed the victim that when he got back, he "was going to pick up where we left off." When he left the room, the victim feared the assaults would recommence and exited the room. She sought the assistance of a motel patron several doors down. The authorities were summoned, and the victim was eventually taken by ambulance to the hospital where she was released after treatment.

Photographs were taken of the victim at the sheriff's department on October 20. These photographs reveal extensive bruising and swelling of the victim's face.

The defendant testified at trial that the victim willingly went with him. He denied striking her and stated her injuries were caused when he suddenly hit his brake while driving. He further testified she fell at the gas station and injured her nose and eyes. In summary, the defendant denied any forcible confinement or assault upon the victim.

The jury was charged as to the indicted offense of especially aggravated kidnapping with serious bodily injury and the lesser offenses of aggravated kidnapping, simple kidnapping and false imprisonment. The jury convicted the defendant of the lesser offense of aggravated kidnapping.

## SUFFICIENCY OF THE EVIDENCE

In separate portions of his brief, defendant alleges the state failed to establish venue in Giles County and failed to prove the elements of aggravated kidnapping beyond a reasonable doubt. The state, on the other hand, contends the victim was falsely imprisoned in Alabama, received "bodily injuries" there, and the false imprisonment continued into Tennessee where it was consummated. Thus, the state argues that venue was proper in Giles County, and the evidence supports the conviction for aggravated kidnapping.

4

## A. Venue/Jurisdiction

The defendant contends the state failed to establish venue in Giles County. He insists there was a complete absence of proof as to any assault occurring in Giles County, and the victim's confinement terminated when she failed to escape at the gas station when she had an opportunity to do so.

The crucial issue in this case is not so much one of venue as it is territorial jurisdiction. Tenn. R. Crim. P. 18(d) provides that, assuming this state has "jurisdiction," offenses committed wholly or partly outside this state may be prosecuted in any Tennessee county in which an element of the offense occurs. This provision establishes venue if, and only if, this state has jurisdiction.

Tenn. Code Ann. § 39-11-103 provides that an offense commenced outside this state and consummated in this state may be prosecuted in the county where the offense was consummated. This statute relates to jurisdiction.

The removal and confinement of the victim certainly commenced in Alabama. The assaults leading to personal injury all occurred in Alabama. The confinement of the victim continued while the victim was in Tennessee.

Tennessee's jurisdiction statute, Tenn. Code Ann. § 39-11-103(b)(1), limits our jurisdiction where an offense involves actions committed in both Tennessee and another state. If an offense is "commenced" outside this state and "consummated" in this state, Tennessee has jurisdiction. Tenn. Code Ann. § 39-11-103(b)(1). However, if the offense is "consummated" in another state where it also "commenced," Tennessee does not have jurisdiction.

The state's position at trial was that this kidnapping episode began in Alabama and terminated in Tennessee with the arrest of the defendant. However,

our jurisdiction statute is not based upon the termination of the episode. Our statute is based upon the consummation of the "offense," not the episode. For an offense commenced outside the state, the consummation of the "offense" must be in Tennessee for jurisdictional purposes. *See* Jones v. State, 409 S.W.2d 169, 171-72 (Tenn. 1966) (discussing consummation of an "offense" relative to venue).

The indictment alleged especially aggravated kidnapping "[w]here the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-305(a)(4). At trial it was the state's theory that the victim was assaulted in Alabama where she received her personal injuries with her confinement continuing into the state of Tennessee. The state insists the defendant was properly convicted of the lesser offense of aggravated kidnapping "[w]here the victim suffers bodily injury." Tenn. Code Ann. § 39-13-304(a)(4).

We are constrained to conclude that the "offense" of aggravated kidnapping was consummated in Alabama, not Tennessee. The elements of aggravated kidnapping are (1) removal or confinement substantially interfering with liberty, and (2) the victim suffers bodily injury. Tenn. Code Ann. § 39-13-302(a), 304(a)(4). Both elements were met in Alabama; thus, the offense was consummated in Alabama. The fact that the victim's confinement extended into Tennessee does not mean the aggravated kidnapping was "consummated" here.[1]

This Court is aware of the general rule that a "continuing crime," although complete in the jurisdiction where first committed, may continue to be committed, and may also be punished in another jurisdiction. 22 C.J.S Criminal Law § 161(b)(1989). However, the Tennessee statute forbids jurisdiction if the offense is both "commenced" and "consummated" outside this state. Tenn. Code Ann. § 39-11-103(b)(1). In this case the offense of aggravated kidnapping was commenced and consummated in Alabama.

---

[1]We are aware of nothing that would preclude a prosecution in Alabama.

6

The recent case of State v. Lon Mitchell Pierce, Jr., C.C.A. No. 03C01-9703-CR-00117, Sullivan County (Tenn. Crim. App. filed September 10, 1998, at Knoxville), is distinguishable. In Pierce the defendant participated in the theft of an automobile in Florida. Eventually, a high speed chase ensued in Tennessee resulting in the death of a Tennessee police officer. The defendant was convicted of felony murder in Tennessee, the underlying felony being the theft of the automobile. This Court concluded Tennessee had jurisdiction of the felony murder as the defendant exercised control over the stolen car in Tennessee, and the death occurred in Tennessee. Pierce is distinguishable since the homicide was consummated in Tennessee and not outside this state. Although the original theft of the automobile was in Florida, it continued into Tennessee by defendant's exercise of control over the automobile. However, the homicide was committed in Tennessee. Thus, jurisdiction was proper. If the homicide had been committed in Florida and the defendant fled to Tennessee and exercised control over the automobile in Tennessee, then Tennessee would not have jurisdiction over the felony murder.

We, therefore, conclude that Tennessee did not have jurisdiction over the offense of aggravated kidnapping involving bodily injury. Nevertheless, Tennessee has jurisdiction over false imprisonment since this offense was committed within this state. See Tenn. Code Ann. 39-11-103(a). Furthermore, venue was proper in Giles County as the location of the unlawful confinement. See T. R. Crim. P. 18(a).

## B. Sufficiency of the Evidence - False Imprisonment

False imprisonment is a lesser included offense of aggravated kidnapping. Thus, when the jury found the defendant guilty of aggravated kidnapping, that finding necessarily included a finding of the elements of false imprisonment. We now examine the sufficiency of the evidence for false imprisonment in order to determine whether the conviction may be reduced.

7

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Accordingly, it is the appellate court's duty to affirm a conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789, 61 L. Ed.2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

Defendant's primary contention is that the victim had numerous opportunities to escape the alleged confinement, yet she did not do so. He contends the victim's testimony was so inherently incredible, so contrary to the teachings of basic human experience, and so completely at odds with common sense that no reasonable person could believe her beyond a reasonable doubt.

Although the victim conceded that there were times she was out of the defendant's presence, she chose not to attempt an escape because he was only gone a short period of time. She further testified she feared the defendant because of the previous threats. For this reason also, she did not go with the police officers upon their first visit to the motel. She finally escaped and sought assistance because the defendant told her that "upon his return to the motel room, he would pick up where they left off."

The jury rejected the testimony of the defendant and accredited the testimony of the victim. It was the jury's prerogative to do so. According to the victim's testimony, the defendant confined her unlawfully in Giles County so as to substantially interfere with her liberty. The evidence was sufficient to establish false imprisonment.

_____

## PROSECUTORIAL MISCONDUCT

Defendant contends that prosecutorial misconduct on three (3) separate occasions should have resulted in a mistrial being declared by the trial court. The determination of whether to grant a mistrial rests within the sound discretion of the trial court. State v. Smith, 871 S.W.2d 667, 672 (Tenn. 1994). The reviewing court should not overturn that decision absent an abuse of discretion. State v. Hall, 947 S.W.2d 181, 184 (Tenn. Crim. App. 1997). Our review of prosecutorial misconduct consists of considering five factors to determine whether the prosecutor's statements affected the verdict. State v. Davis, 872 S.W.2d 950, 953-54 (Tenn. Crim. App. 1993); Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976). These are (1) the conduct complained of viewed in the context and in light of the facts and circumstances of the case; (2) any curative measures undertaken by the court and the prosecution; (3) the intent of the prosecutor in making the improper statement; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength and weakness of the case. Judge, 539 S.W.2d at 344.

## A. *Voir Dire*

Defendant contends the prosecutor engaged in misconduct during *voir dire* when he made reference to a prior case in which a man was acquitted of an alleged assault upon his wife. Upon objection by the defendant, the trial court prohibited the prosecutor from making reference to a specific prior case. The prosecutor then clarified his question and asked jurors if they could follow the law even if the defendant and the victim were married.

The prosecutor had no improper intent, and this line of questioning of potential jurors was indeed relevant. Furthermore, defendant has demonstrated no prejudice. Tenn. R. App. P. 36(b).

This issue is without merit.

9

## B.  Blood Splattering

Defendant next complains of two instances in which the prosecutor improperly referred to "blood splattering" evidence.  In a pre-trial motion, the trial court deferred ruling as to whether the investigating officer could be qualified as an expert on blood splattering. The trial court further instructed counsel that the matter was not to be mentioned to the jury pending a jury-out hearing.

During opening statement the prosecutor advised the jury that the investigating officer would be testifying about blood splatters as an expert witness. There was no objection by the defendant.  The issue is waived. State v. Seay, 945 S.W.2d 755, 762 (Tenn. Crim. App. 1996).

Ultimately, the officer testified only as to his factual observations of the blood found in the truck.  We conclude the defendant was not prejudiced by the prosecutor's reference in opening statement to the investigating officer as an expert witness in blood splattering.

Defendant further complains the prosecutor disregarded the court's pre-trial instructions by asking the investigating officer about the blood found in the vehicle. The trial court determined that the officer could testify as to his observations but not offer expert opinion.  The witness then testified about his observations of the blood found in the truck's interior.  There was no prosecutorial misconduct, nor was the defendant prejudiced.  Tenn. R. App. P. 36(b).

This issue is without merit.

## VICTIM BIAS

10

Defendant contends the trial court erred in disallowing questions as to the alleged victim's bias. The trial court excluded testimony from the victim regarding an alleged offer by the victim to discontinue prosecution in exchange for the sum of $25,000. The trial court found the testimony related to an offer of compromise and was not admissible under Tenn. R. Evid. 408. We agree with the defendant's contention that the evidence was admissible under Tenn. R. Evid. 616 in order to show bias of a witness.

The proffered testimony of the victim arguably revealed that she agreed to terminate prosecution for a payment of $25,000. The money was not paid, and prosecution proceeded. In her divorce complaint the victim requested $25,000, but ultimately was awarded only $5,000.

### A. Tennessee Rules of Evidence 408

Tenn. R. Evid 408 is inapplicable. In the criminal context, the rule expressly states that offers of compromise are inadmissible in an attempt to "prove liability for ... a criminal charge or its punishment." *See* N. Cohen, D. Paine & Sheppeard, *Tennessee Law of Evidence*, § 408.2 (3d ed. 1995). However, in this instance the offer of compromise was not sought to be introduced to prove guilt of a criminal charge; but rather to show a witness' bias or prejudice. The rule expressly provides that it does not exclude evidence being offered for this purpose. Thus, Tenn. R. Evid. 408 has no applicability.

### B. Tennessee Rules of Evidence 410

The state contends Tenn. R. Evid. 410 prohibits the introduction of this evidence. This rule prohibits the introduction of statements made in the course of plea discussions with a prosecuting attorney which do not result in a guilty plea. Statements by a victim of a crime made to defense counsel are not covered by the

rule.

## C. <u>Tennessee Rules of Evidence 616</u>

This testimony regarding possible bias of the victim was admissible pursuant to Tenn. R. Evid. 616 which provides that a witness may be cross-examined as to bias or prejudice against a party. *See* <u>State v. Reid</u>, 882 S.W.2d 423, 428 (Tenn. Crim. App. 1994). Further, cross-examination as to bias of a witness against the accused involves the constitutional right of confrontation. *See* <u>Davis v. Alaska</u>, 415 U.S. 308, 316-17, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); <u>State v. Reid</u>, 882 S. W. 2d at 428. Thus, the trial court erred in limiting the cross-examination of the victim.

## D. <u>Harmless Error Analysis</u>

Having found error, we must now determine whether the error was harmless. A violation of the right to confrontation may be deemed harmless if this Court may confidently say, based on the whole record, that the constitutional error was harmless beyond a reasonable doubt. *See* <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986); <u>Chapman v. California</u>, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

We conclude the error was harmless beyond a reasonable doubt. In subsequent examination of the victim, she conceded that she sought $25,000 in her divorce action and received only $5,000. She was thoroughly cross-examined as to her hostility toward the defendant. Evidence of her confinement in Giles County based upon fear and threats was overwhelming. In light of the entire record, we conclude this evidentiary error was harmless beyond a reasonable doubt. Tenn. R. App. P. 36(b).

12

This issue is without merit.

## MEDICAL RECORDS

Defendant contends the trial court erred in admitting certain medical records under the business records exception to the hearsay rule. *See* Tenn. R. Evid. 803(6). At trial the defendant contended the introduction of the medical records without explanation was prejudicial to the defendant in reference to the victim's injuries. The defendant also objected to the introduction of the victim's statements on the medical report that she had been assaulted and beaten. Defendant suffered no prejudice as to the medical report's description of her injuries. Furthermore, the victim's statements on the medical report that she had been assaulted and beaten were cumulative and harmless.

This issue is without merit.

## FINAL ARGUMENT OF DEFENSE COUNSEL

Defendant next contends the trial court improperly sustained the state's objection to a portion of defense counsel's final argument. During the cross-examination of the victim, defense counsel asked if the victim told the Tennessee prosecuting authorities that "the Alabama Court had enjoined [her] from intimidating, aggravating, harassing, threatening, or assaulting Jimmy Legg." The victim replied that she had not. There was no independent proof offered as to whether there was such an order. During final argument defense counsel stated that the victim "had to be enjoined and restrained from a Court in Alabama." The prosecutor objected and stated there was no evidence to support this statement. The trial court noted that the victim had testified she did not advise prosecuting authorities of such an order; however, the trial court concluded that her testimony did not establish that there was in fact such an order in existence.

13

We agree with the trial court's determination. Furthermore, if there was error, it was clearly harmless. Tenn. R. App. P. 36(b).

## FAILURE TO CHARGE LESSER OFFENSES

Finally, defendant contends the trial court erred by failing to instruct the jury on the offenses of aggravated assault and assault as lesser included offenses of especially aggravated kidnapping. In light of the reduction to false imprisonment, we decline to address this issue.

## CONCLUSION

The conviction for aggravated kidnapping is vacated and reduced to false imprisonment. Defendant is sentenced to 11 months and 29 days. The case is remanded for entry of a modified judgment.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**


_____
**JOSEPH M. TIPTON, JUDGE**


_____
**THOMAS T. WOODALL, JUDGE**