# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 11, 2011

## BOBBY JOE ROLLINS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Marshall County**
**No. 09CR59     Robert Crigler, Judge**

---

**No. M2010-00131-CCA-R3-PC - Filed March 11, 2011**

---

Following a jury trial, the Petitioner, Bobby Joe Rollins, was convicted of aggravated robbery, a Class B felony, and sentenced as a Range III, persistent offender to twenty-eight years. See Tenn. Code Ann. § 39-13-402 (aggravated robbery defined). This Court affirmed his conviction and sentence on direct appeal. See State v. Bobby Joe Rollins, No. M2008-00284-CCA-R3-CD, 2008 WL 5427733 (Tenn. Crim. App., Nashville, Dec. 31, 2008) (mem.), perm. to appeal dismissed, (Tenn. Mar. 23, 2009). The Petitioner filed a timely petition for post-conviction relief and, after a hearing, the post-conviction court denied relief. In this appeal, the Petitioner claims that he was denied effective assistance of counsel because: (1) Trial Counsel misadvised the Petitioner with respect to whether he should testify at his trial; (2) Trial Counsel failed to undertake any meaningful trial preparations with the Petitioner; and (3) Trial Counsel failed to object and request a mistrial when a witness stated that the Petitioner had been in "the pen." After our review, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Hershell D. Koger, Pulaski, Tennessee, for the appellant, Bobbie Joe Rollins.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Charles Crawford, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General,  for the appellee, State of Tennessee.

## OPINION

### Factual Background

In the Petitioner's direct appeal, this Court summarized the facts underlying his aggravated robbery conviction as follows:

The evidence presented at trial established that on the morning of December 12, 2006, the [Petitioner] entered the Discount Tobacco Outlet store in Lewisburg, Tennessee. After other customers in the store left, the [Petitioner] approached the store manager who was working the cash register and asked for a package of cigarettes. The store manager turned and got the requested cigarettes. When she placed the cigarettes on the counter, she noticed that the [Petitioner] had placed a pistol on the counter, partially covered with his hand. The [Petitioner] told the manager that he had a gun and that he wanted all the cash. The manager complied with his request and gave him the cash on hand, approximately two hundred and fifty dollars. The [Petitioner] also demanded a carton of cigarettes, which the manager gave him. The [Petitioner] then left the store with the cash and the cigarettes.

The store manager recognized the [Petitioner] as someone who previously had been in the store as a customer between five and ten times. The store also had a video surveillance camera which recorded the entire robbery. The video recording was shown to the jury. Police officers responded to the store manager's telephone call. The first police officer who responded viewed the store video recording and recognized the [Petitioner] from previous contacts with him. The following day, the [Petitioner] was stopped for driving a vehicle with expired tags. Upon stopping the vehicle, the officer determined that there was an outstanding warrant for his arrest for the aggravated robbery that had taken place the previous day. The [Petitioner] was taken into custody.

At trial, the store manager identified the [Petitioner] in court as the person who committed the robbery. She stated she was one hundred percent certain of her identification of the [Petitioner].

On appeal, the [Petitioner] does not argue that the evidence at trial was insufficient to support his identity as the perpetrator of the aggravated robbery. Indeed, in an effort to prove that he was intoxicated at the time he committed the robbery, the [Petitioner] called as witnesses two individuals who were in the vehicle with him when he arrived at the store to commit the robberies. Both of these "defense" witnesses stated that the [Petitioner] entered the store

-2-

with a pistol for the purpose of committing a robbery. Both witnesses also testified that the [Petitioner] had consumed alcoholic beverages prior to committing the robbery.

State v. Bobby Joe Rollins, No. M2008-00284-CCA-R3-CD, 2008 WL 5427733, at *1 (Tenn. Crim. App., Nashville, Dec. 31, 2008) (mem.), perm. to appeal dismissed, (Tenn. Mar. 23, 2009).

This Court affirmed the Petitioner's conviction, and the Petitioner filed a timely petition for post-conviction relief. In his petition and subsequent amended petition, the Petitioner claimed, inter alia, that he was denied effective assistance of counsel because Trial Counsel did not prepare for his trial, misadvised the Petitioner with respect to whether he should testify, and did not move for a mistrial when a defense witness testified that the Petitioner had been in "the pen." The post-conviction court conducted a hearing regarding his petition on December 29, 2009.

The Petitioner testified that Trial Counsel only met with him one time at the jail to convey a twenty-five-year plea offer from the State and that the meeting lasted "a minute or so." He recalled that he spoke with Trial Counsel at the courthouse whenever his case was on the docket. The Petitioner also stated that Trial Counsel failed to provide him a copy of the discovery material before trial. However, on cross-examination, the Petitioner admitted that he "could have" been shown discovery material.

The Petitioner did not testify at his trial. When asked what he would have said if he had testified, the Petitioner replied as follows:

> I would have told them that I was in a blackout when this had happened, you know, and that I didn't remember doing this. I knew the people that was in the store real well because I have been there all week, you know. I mean, that is where I went to get my beer and my cigarettes.
>
> I knew it was a video camera up there. I would have told them, after that happened, I went back past my house where I lived at, you know. All of the county and city and everything was there. I went back past the place right there. Something had to be wrong with me. I am out on the main drag, getting gas and some more beer.
>
> Any normal person, or not in a blackout or something, wouldn't be staying in town after they robbed the place that they know and everything.

And the police. I know the police knew me. I am on the video. I know they know me.

The Petitioner said that he did not remember if, prior to the trial, Trial Counsel discussed with him whether or not he should testify in his own defense. He stated that the first time he remembered discussing the issue with Trial Counsel was during the trial and that Trial Counsel advised him that, given the Petitioner's extensive criminal record,[1] testifying might not be the best course of action. The Petitioner acknowledged that Trial Counsel told him it was his choice whether or not he testified.

Trial Counsel testified that he had been practicing law for about four years and that criminal defense accounted for about sixty to seventy percent of his practice. He recalled that, in addition to the brief meeting in which he presented the State's plea offer to the Petitioner, he met with the Petitioner at least three times in the inmate library. During the first meeting, which occurred within the first month after arraignment, Trial Counsel said that he discussed the discovery material and witness list with the Petitioner. He recalled that during the second meeting, they discussed "the fact that [Trial Counsel] spoke with a couple of people regarding the blackouts and perhaps obtaining a psychiatrist to discuss the matter at trial." Trial Counsel testified that the third meeting occurred approximately two weeks before the Petitioner's trial. Trial Counsel said he was "almost positive" that he gave the Petitioner a copy of the discovery before trial. He also testified that the Petitioner saw every page of discovery during their three meetings.

Regarding his preparation for the Petitioner's trial, Trial Counsel recalled that he spoke to "a few of the officers," a clinical psychologist who evaluated the Petitioner, the attorney for the Petitioner's co-defendant, and Connie Adams, the Petitioner's ex-wife. Trial Counsel testified that he was not surprised by anything that the State's witnesses said during the trial and that he was prepared to cross-examine them.

Trial Counsel recalled that, during Ms. Adams' testimony, she made a comment "about after the [Petitioner] got out of the pen." However, he explained that the comment "came and went so quickly, I felt that, talking to my client about it, that it was our best idea, our best defense, not to bring that back to the minds of the jury." He also said that, after Ms.

---

[1] In the Petitioner's direct appeal, we noted as follows:

The presentence report reflects that the [Petitioner] had at least two felony convictions in addition to those necessary to establish his range. His felony convictions include one aggravated assault, one robbery, and four burglaries. In addition, the report reflects that the [Petitioner] had more than twenty misdemeanor convictions, approximately fifteen of which were for public intoxication or driving while under the influence of an intoxicant.

Adams testified, the trial court asked if it should give a curative instruction regarding her comment. Trial Counsel recalled that he discussed the matter with the Petitioner and that the Petitioner "agreed with my opinion that we should not get a curative instruction; that it was a very minor statement among a lot of talking by Ms. Adams, and that we shouldn't bring it back in front of the jury."

As to whether or not the Petitioner should testify at his trial, Trial Counsel said that he began discussing the issue with the Petitioner during their meeting approximately two weeks before the trial. He recalled that, during the trial, the two also discussed the issue. Trial Counsel said that he expressed two concerns to the Petitioner: (1) the Petitioner had given a statement to police and Trial Counsel was concerned that the Petitioner's testimony might be inconsistent with his statement; and (2) Dr. Jon Garrison, a clinical psychologist, testified that his tests indicated that the Petitioner was not being truthful with his answers when Dr. Garrison evaluated him. Trial Counsel recalled that the Petitioner "was remembering different things in different ways throughout preparation for trial, and then on the day of trial." He said he worried that, to the jury, the Petitioner would appear to be a "cunning" witness.

The post-conviction court denied the Petitioner's request for relief, and this appeal followed.

**Analysis**

In this appeal, the Petitioner claims that he was denied effective assistance of counsel because: (1) Trial Counsel misadvised the Petitioner with respect to whether he should testify at his trial; (2) Trial Counsel failed to undertake any meaningful trial preparations with the Petitioner; and (3) Trial Counsel failed to object and request a mistrial when a witness stated that the Petitioner had been in "the pen."

To sustain a petition for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not reweigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The post-conviction judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer and actual prejudice to the defense caused by the deficient performance. Id. at 687; Burns, 6 S.W.3d at 461. To demonstrate prejudice, a defendant must show "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The defendant bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. Id. "However, a trial court's conclusions of law—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id. (emphasis in original).

**A. Advice Regarding Whether the Petitioner Should Testify**

The Petitioner argues that Trial Counsel "did not sufficiently confer with, prepare and advise" him whether or not he should testify in his own defense and, as a result, his decision not to "testify was not a knowing and intelligent decision." After reviewing the record, we cannot agree with the Petitioner's contention.

The Petitioner claims that, until during the trial itself, he and Trial Counsel did not discuss whether or not he should testify. However, Trial Counsel testified that he began discussing the issue with the Petitioner during their meeting approximately two weeks before the trial. He said that he told the Petitioner that no one could make him testify and that no one could stop him from testifying if he wanted to. Trial Counsel also recalled as follows:

> In looking at the previous record that he had and the evidence we were anticipating presenting, including [the Petitioner's co-defendant] and Garrison and Adams as our defense, I didn't think anything he could say would help our case, and including, not just his record, but also his statement that he had made previously, would be used against him, to his detriment.

Moreover, the transcript of the Petitioner's trial reveals that his decision not to testify was a knowing and voluntary one. After three defense witnesses testified, the following discussion occurred outside of the presence of the jury:

> [Trial Court]: [Trial Counsel], do you need additional time to talk to him?
>
> [Trial Counsel]: I wanted to reconfirm the situation was what it was when we were done. We have been talking about it the whole day.
>
> [Trial Court]: I will give you another minute or two if you need it.
>
> [Trial Counsel]: We're ready to go.
>
> [Trial Court]: What has he elected to do, and then I will address him?
>
> [Trial Counsel]: In our conversation, Your Honor, he has elected not to testify in this trial.
>
> . . . .
>
> (The [Petitioner] was sworn.)

-7-

. . . .

[Trial Court]:  As a defendant, you get a choice as to whether or not you testify.  Do you understand that?

[The Petitioner]:  Yeah.

[Trial Court]:  If you want to testify, you have an absolute right to do so, and nobody can stop you from testifying if that is what you want to do.  Do you understand that?

[The Petitioner]:  Yes, sir.

[Trial Court]:  If you do not want to testify, you do not have to, and nobody can make you testify if you don't want to.  Do you understand that?

[The Petitioner]:  Yeah.

[Trial Court]:  People can give you advice, your lawyers, your friends, whoever you want to talk to, but you get to make the decision.  Nobody can tell you whether to testify or not.  Do you understand that?

[The Petitioner]:  Yes[.]

[Trial Court]:  And [Trial Counsel] has announced you have decided not to testify, is that correct?

[The Petitioner]:  Yes.

[Trial Court]:  Are you telling me you do not want to testify?

[The Petitioner]:  Yes.

[Trial Court]:  Is that your free and voluntary decision?

[The Petitioner]:  Yes.

Thus, the trial court and Trial Counsel both informed the Petitioner that the decision whether or not to testify was his own and that no one could force him to testify or not to testify.  Moreover, the Petitioner stated that he understood that and that it was his free and

voluntary decision not to testify. After reviewing the foregoing, we agree with the post-conviction court that the Petitioner "understandingly, freely and voluntarily elected not to testify" and that "there was no ineffective assistance of counsel involved in that decision." The Petitioner is not entitled to relief on this issue.

## B. Trial Preparation

The Petitioner asserts that Trial Counsel was ineffective because he failed "to undertake any meaningful trial preparations" with him. Specifically, he alleges that Trial Counsel failed to meet with him to prepare for trial and that Trial Counsel failed "to timely provide and/or review the State's discovery" with him.

Trial Counsel testified that he met with the Petitioner at least four times before the trial and that during these meetings the Petitioner saw "every page" of the discovery. He recalled that, during the first meeting, he discussed the discovery material and witness list with the Petitioner. During the second meeting, he said that they discussed the defense of claiming the Petitioner was having a blackout during the aggravated robbery. The third meeting occurred about two weeks before the trial. Trial Counsel said that he briefly met with the Petitioner one additional time to convey a plea offer from the State.

Thus, we must agree with the post-conviction court that the Petitioner failed to show by clear and convincing evidence that Trial Counsel's preparations for trial were deficient. The Petitioner is not entitled to relief on this issue.

## C. Failure to Request a Mistrial

During the State's cross-examination of Ms. Adams, the following transpired:

[Prosecutor]: When were you married to the [Petitioner], Connie?

[Witness]: Fifteen years ago.

[Prosecutor]: How many times have you been married, Connie?

[Witness]: Five times.

[Prosecutor]: How many times have you been arrested, Connie?

[Witness]: A few times.

[Prosecutor]: More than a few?

[Witness]: Uh-huh.

[Prosecutor]: A bunch?

[Witness]: Plenty.

[Prosecutor]: And Connie, you went back, even though you were married to the [Petitioner] 15 years ago, you have been back living with him off and on ever since then just about, haven't you?

[Witness]: Since he got out of the pen.

After Ms. Adams' testimony concluded, the trial court asked the Petitioner whether he was going to testify or not. See Momon v. State, 18 S.W.3d 152, 162 (Tenn. 1999). Then, the following colloquy occurred:

[Trial Court]: Let's see, let's take this another step. The law would probably want me to ask you, [Trial Counsel], as to Ms. Adams' remark "since he got out of the pen," I will give a curative instruction as to that and ask them to disregard that if you would like me to. However, that is a strategic decision. It may draw more emphasis to it. It is your choice on that. If you want me to tell them to disregard that remark, I will. If you prefer not to emphasize it, then that is your right.

[Trial Counsel]: Frankly, Your Honor, I think it passed right over, and that is where I would like to leave it.

The Petitioner contends that Trial Counsel was ineffective because he failed to object to Ms. Adams' comment about "the pen" and failed to request a mistrial. The State argues that, even if Trial Counsel had requested a mistrial, it is unlikely that the trial court would have granted the request and, therefore, no prejudice was shown.

Trial Counsel's decision not to object to Ms. Adams' reference to "the pen" was a tactical decision, as he did not want to call the jury's attention to her comment. Trial Counsel testified that Ms. Adams' comment "came and went so quickly, I felt that, talking to my client about it, that it was our best idea, our best defense, not to bring that back to the minds of the jury." Moreover, Trial Counsel testified that he discussed the issue with the Petitioner and that the Petitioner agreed with him.

Regarding a mistrial, Trial Counsel recalled that he did not even think about requesting a mistrial at that point. We note that "[a] mistrial is usually appropriate in a criminal case only where there is a 'manifest necessity.'" State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996) (quoting Arnold v. State, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977)). "The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." Id. An abstract formula should not be applied mechanically in determining whether a mistrial was necessary, and all relevant circumstances should be taken into account. State v. Mounce, 859 S.W.2d 319, 322 (Tenn. 1993). Whether a mistrial should be granted is a determination left to the sound discretion of the trial court. Reid, 164 S.W.3d at 342 (citing State v. Smith, 871 S.W.2d 667, 672 (Tenn. 1994)). The trial court's decision should not be overturned absent an abuse of discretion. Id. Additionally, the party arguing that a mistrial should have been granted bears the burden of establishing its necessity. Id. (citing Williams, 929 S.W.2d at 388).

At the end of the hearing, the post-conviction court stated that it would not have granted a mistrial had the Petitioner asked for one. The court also noted that, because the Petitioner's defense was that he was intoxicated and did not have the required mens rea to commit aggravated robbery, not that someone else committed the offense, the prejudicial effect of Ms. Adams' comment was not great. We agree with the post-conviction court and conclude that the Petitioner failed to demonstrate that a mistrial was necessary and that he was prejudiced by Trial Counsel's failure to request one. The Petitioner is not entitled to relief on this issue.

## Conclusion

Based on the foregoing authorities and reasoning, we affirm the denial of post-conviction relief.

_____
DAVID H. WELLES, JUDGE