IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 7, 2003 Session

**STATE OF TENNESSEE v. LAWRENCE TAYLOR**

**Direct Appeal from the Circuit Court for Tipton County**
**No. 4016     Joseph H. Walker, Judge**

---

**No. W2002-00183-CCA-R3-CD  - Filed February 14, 2003**

---

A Tipton County jury convicted the defendant of the delivery of .5 grams or more of cocaine.  On appeal, he argues: (1) the evidence was insufficient to support his conviction; (2) the trial court erred in refusing to grant a mistrial after the prosecutor improperly questioned the defendant about prior drug sales; and (3) the trial court erroneously instructed the jury regarding his co-defendant's status as an accomplice.  We conclude the trial court erred in refusing to grant a mistrial.  Accordingly, we reverse the judgment of the trial court and remand the matter for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Remanded**

JOE G. RILEY, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

J. Thomas Caldwell, Ripley, Tennessee, for the appellant, Lawrence Taylor.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and James Walter Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On December 21, 1999, Linda Jackett and Suzette Graves, "confidential informants" employed by the 25th Judicial District Drug Task Force, went to the defendant's home to purchase drugs.  The twenty-seven year-old defendant was confined to a wheelchair due to paralysis caused by a gunshot wound.  Jackett and Graves testified there were several men in the defendant's living room, including the defendant and his co-defendant, Gavin Woods.  According to the informants, Jackett asked the defendant if they could purchase "nine;" the defendant responded by asking how much money they had; and Graves replied, "140."  They stated the defendant motioned to Woods by pointing at a cabinet, and Woods returned with nine pieces of crack cocaine.  Jackett and Graves testified that Graves and Woods reached across the defendant to exchange the money and the drugs.

Sgt. Dan Jones, assistant director of the Drug Task Force, testified he observed the informants enter the defendant's house and monitored the transaction via a wireless transmitter. Jones stated he heard Jackett ask, "What can I get for nine?"; the defendant ask, "What for?"; and Graves say, "140." Jones further testified the informants returned from the transaction with nine rocks of cocaine. A forensic scientist with the TBI crime laboratory testified the nine rocks were cocaine base weighing 1.2 grams.

The defendant testified and denied selling drugs to the informants. He testified Jackett and Graves came to his home while he and his friends David Brent, Isaac Mosley, and Gavin Woods were playing dominoes. The defendant stated he knew Jackett from years before when they smoked crack cocaine together, but he did not know Graves. According to the defendant, after he and Jackett greeted each other, Jackett asked if she could purchase an "eightball" for $140, to which he replied that he did not have it. The defendant said Jackett then asked, "How about a deal for $140?", and he responded, "No." He testified she asked if she could get "nine" for $140, he "backed away," and their conversation turned to his dog. He indicated he and Jackett had no further discussion about drugs. He stated he was engaged in conversation with Jackett and did not see a drug transaction between Woods and Graves.

Co-defendant Gavin Woods testified for the defendant that Jackett asked the defendant if she could purchase an "eightball" for $140, and that the defendant responded that he did not have it. Woods stated Jackett asked the defendant something else, and the defendant again told her, "No." Woods said he took nine rocks of cocaine off his own person and sold them to Graves for $140. According to Woods, the defendant did not benefit from or aid in the sale. Woods had previously pled guilty to delivery of cocaine as charged in the indictment.

David Brent testified he heard Jackett ask the defendant to sell her cocaine three times; he stated the defendant declined twice and did not respond to the third request. Brent stated he saw Graves and Woods make a hand-to-hand transaction while they were standing in the doorway. Isaac Mosley testified he heard the defendant decline to sell Jackett drugs. Mosley said he observed Graves hand money to Woods.

The jury convicted the defendant of delivery of .5 grams or more of cocaine. The trial court imposed a fifteen-year sentence.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant first contends that there was insufficient proof to support his conviction. He maintains that because Gavin Woods testified he acted alone in selling cocaine to the informants, the jury's finding was based on "speculation."

A defendant challenging the sufficiency of the proof has the burden of illustrating why the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). We review the evidence in the light most favorable to the prosecution to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v.

Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979). We do not reweigh or reevaluate the evidence, but afford the state the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Evaluation of witnesses' credibility, the weight and value to be given to the evidence, and resolution of factual issues raised by the evidence is left to the trier of fact. *Id.* A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the state's witnesses, and a presumption of guilt replaces the presumption of innocence. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

It is clear the jury accredited the testimony of the state's witnesses that the defendant directed Woods to a cabinet containing cocaine after Jackett negotiated with the defendant for the sale of cocaine. It was the jury's prerogative to accredit this testimony and reject the defense proof. Therefore, we conclude the state's proof was sufficient to support the defendant's conviction.

## II. DEFENDANT'S PRIOR DRUG SALES

The defendant contends the state wrongfully elicited testimony from the defendant concerning prior drug sales. The defendant testified at trial. During his cross-examination, the prosecutor and the defendant engaged in the following exchange:

Prosecutor: . . . Did [Isaac Mosley] work for you [selling crack cocaine]?
Defendant: I don't sell crack cocaine, so he can't work for me.
Prosecutor: You don't sell crack cocaine?
Defendant: No.
Prosecutor: Never have?
Defendant: In the past. In the past. Yeah, when I was younger, I have.

Defense counsel objected. The trial court sustained the objection, but failed to give any kind of curative instruction. Defense counsel moved for a mistrial on the grounds that the prosecutor improperly elicited proof of the defendant's prior drug sales; the trial court denied the motion. The defendant argues the trial court erred in denying his motion for a mistrial.

The state now argues that, during his direct examination, the defendant "opened the door" to the prosecutor's question regarding whether the defendant had ever sold crack cocaine; therefore, evidence of the defendant's past drug sales would be admissible under the doctrine of curative admissibility. This doctrine allows the state to present otherwise inadmissible evidence "in order to explain or counteract a negative inference" created when a defendant has injected an issue into the case. *See* State v. Land, 34 S.W.3d 516, 531 (Tenn. Crim. App. 2000). The rule is derived from fundamental fairness and is based on the notion that a jury might be misled absent the contradictory evidence. *Id.* at 531-32. It does not justify the admission of evidence likely to do more harm than good. *Id.* at 532 (citing 27 **Fed. Prac. & Proc. Evid.** § 6096 (1990)).

The state contends the defendant "opened the door" to whether he had previously sold drugs during this exchange between defense counsel and the defendant on <u>direct examination</u>:

| | |
|---|---|
| Defense Counsel: | Okay. Now, Mr. Taylor, did you ever sell either of these ladies any kind of drugs? |
| Defendant: | Never. |
| Defense Counsel: | Did any of them ever pay you any kind of money? |
| Defendant: | Never. |
| Defense Counsel: | Did you ever have anything to do with promoting the sale of any kind of drugs? |
| Defendant: | No, sir. |
| Defense Counsel: | Did you ever assist Mr. Woods in selling these drugs? |
| Defendant: | No, sir. |
| Defense Counsel: | Did you have anything at all to do with that? |
| Defendant: | No, sir. |

It is the state's position on appeal that the third question posed by defense counsel, "Did you ever have anything to do with promoting the sale of any kind of drugs?", referred to the defendant's involvement in <u>any</u> drug sales in the past. However, it is apparent from the context of the line of questioning that defense counsel's questions were limited to the transaction on December 21, 1999. Therefore, we find the defendant did not represent that he had never participated in a drug sale so as to "open the door" to questions on prior drug sales. Further, we note the state did not advance this argument with the trial court at the time the defendant posed his objection; instead, the argument is raised by the state for the first time on appeal. A party cannot change theories from the trial court to the appellate court. <u>State v. Alder</u>, 71 S.W.3d 299, 303 (Tenn. Crim. App. 2001).

Evidence of prior drug sales is irrelevant to the issues in this trial unless it is relevant to the defendant's credibility. The defendant testified, "I don't sell crack cocaine," and he was subject to impeachment on that testimony. However, the defendant did <u>not</u> testify he <u>never</u> sold crack cocaine; therefore, he was not subject to attack by establishing prior drug sales.

We note for practical guidance that a prosecutor should not ask such a question about prior illegal conduct, especially the same type of offense for which the defendant is presently on trial, without at least approaching the court and defense counsel, out of the jury's hearing, and indicating his or her intention. Jury-out hearings should be conducted when the state intends to introduce evidence of prior specific instances of bad conduct by an accused. *See* Tenn. R. Evid. 404(b)(1), 405(a)(1), 608(b)(1). At issue here is whether the defendant "opened the door" to evidence of prior bad conduct by his testimony. Regardless, the evidence is of such a devastating nature that the prosecutor should secure a ruling before asking such a question in order to avoid a mistrial.

We conclude that the question was improper, and the trial court properly sustained the defendant's objection. Therefore, we must determine whether the trial court erred in denying the defendant's request for a mistrial as a remedy for this highly prejudicial and improper question.

The determination of whether to grant a mistrial rests within the sound discretion of the trial court. State v. Smith, 871 S.W.2d 667, 672 (Tenn. 1994). The reviewing court should not overturn that decision absent an abuse of discretion. State v. Brown, 53 S.W.3d 264, 284 (Tenn. Crim. App. 2000). The burden of establishing the necessity for mistrial lies with the party seeking it. State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). No abstract formula should be mechanically applied in making this determination, and all circumstances should be taken into account. State v. Mounce, 859 S.W.2d 319, 322 (Tenn. 1993).

There are three non-exclusive factors which the Tennessee courts have applied in determining whether a mistrial was necessary after improper testimony was presented to the jury: (1) whether the state elicited the testimony; (2) whether the trial court gave a curative instruction; and (3) the relative strength or weakness of the state's proof. State v. Demetrius Holmes, No. E2000-02263-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 923, at *11 (Tenn. Crim. App. Nov. 30, 2001, at Knoxville), *perm. to app. denied* (Tenn. 2002). In the instant case, the record clearly demonstrates the testimony was the product of the prosecutor's improper question, and the trial court, although sustaining the objection, gave no curative instruction. These factors weigh in favor of a mistrial.[1]

We next examine the strength of the state's case. Although we have concluded the state's proof was sufficient to support the defendant's conviction, we must observe that the state's case totally depended upon the jury's assessment of the witnesses' credibility, including the defendant's credibility, and upon the tape recording of the wireless audio transmission of the drug transaction. Jackett and Graves testified that the defendant did not say he did not have any drugs, and that the tape did not contain such a statement by the defendant. The informants also testified the defendant silently motioned to direct Woods to get the drugs from the cabinet before Woods and Graves reached across the defendant to complete the transaction.

The defendant and his witnesses testified the defendant told Jackett that he did not have any drugs. All defense witnesses denied that the defendant participated in the drug transaction. The defendant testified he had known Jackett from years past but had not seen her in a long time, and he could hear his voice on the tape stating, "I ain't got it," in reply to Jackett's request to purchase drugs. Defendant further testified his conversation with Jackett then immediately turned to a discussion about his dog.

The audio tape included in the record on appeal is difficult to hear except for portions of conversations that occurred following the transaction. The tape does reveal that the defendant said to Jackett, "Long time no see." In addition, our review of the tape, although admittedly difficult to hear, appears to reveal the defendant saying, "I ain't got no crack," or similar words. The tape is also corroborative of the defendant's testimony about the conversation concerning the dog shortly after the defendant's initial encounter with Jackett. Further, we recognize that the crucial portion of the state's proof, the testimony of Graves and Jackett that the defendant motioned to Woods, is

---

[1]We also note that during the defendant's cross-examination, the prosecutor asked him if Frank Smith, Edison Williamson, or Henry Nash worked for him selling drugs. Defense counsel at oral argument contended the prosecutor pointed out these individuals in the courtroom; however, the record is silent as to whether these individuals were in the courtroom. Regardless, the state introduced no proof that these individuals were in any way involved in this transaction.

incapable of being either confirmed or refuted on the audio tape. In short, as best as we can determine from the record before us, the proof could have supported alternative conclusions by the jury as to the defendant's guilt depending on how the jury weighed the credibility of the witnesses and what the jury was able to decipher from the audio tape. The state's proof was not overwhelming. As such, we cannot conclude that the improper testimony elicited by the state from the defendant regarding prior drugs sales did not affect the jury's verdict. Given all the facts and circumstances before us, including the state's posing of the improper question and the lack of a curative jury instruction, we conclude the trial court erred in failing to grant the defendant's request for a mistrial. *See* Tenn. R. App. P. 36(b). Therefore, this case must be remanded to the trial court for retrial.

### III. JURY CHARGE ON ACCOMPLICE TESTIMONY

The trial court charged the jury that the testimony of an accomplice must be corroborated. It further stated, "It's a question for the jury to determine whether an accomplice's testimony has been sufficiently corroborated. In this case, Gavin Woods was an accomplice in this alleged crime." After the trial court completed its instructions to the jury, the defendant objected to the jury charge that Woods was an accomplice as a matter of law on the grounds that it was tantamount to an instruction that the defendant committed the crime. The trial court offered to recharge the jury. Defense counsel then advised the trial court, "I don't care about recharging. I believe that would add undue . . . emphasis to part of this case, and I think by law I need to surrender my objection." It is clear from these remarks that the defendant has waived this issue. *See* Tenn. R. App. P. 36(a).[2]

### CONCLUSION

While the defendant's argument that there was insufficient evidence to support his conviction is without merit and his argument that the trial court erred in instructing the jury is waived, we conclude the trial court erred in failing to grant the defendant's request for a mistrial after the state improperly elicited proof that the defendant had previously sold drugs. Therefore, we reverse the judgment of the trial court and remand this matter for a new trial.

_____

JOE G. RILEY, JUDGE

---

[2]Upon retrial, the trial court may well agree with defense counsel that the accomplice instruction need not be given if Woods's testimony does not implicate the defendant in the transaction.