IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 9, 2003

## STATE OF TENNESSEE v. REGINALD DERELL BALDON

**Direct Appeal from the Circuit Court for Lauderdale County**
**Nos. 7168 and 7226     Joseph H. Walker, Judge**

---

**No. W2002-01766-CCA-R3-CD  - Filed September 12, 2003**

---

A Lauderdale County jury convicted the Defendant, Reginald Derell Baldon, of three counts of burglary, three counts of vandalism over $1,000, one count of theft over $1,000, one count of vandalism over $500, and four counts of misdemeanor theft stemming from three separate break-ins. He was sentenced to an effective term of twenty years.  On appeal, the Defendant argues: (1) the evidence was insufficient to support his convictions; (2) the State failed to provide proper discovery pursuant to Tennessee Rule of Criminal Procedure 16; (3) the trial court erred in denying a motion for mistrial due to the prosecutor's reference to the Defendant's failure to testify; and (4) the trial court erred in refusing to instruct the jury on aggravated criminal trespass as a lesser-included offense of burglary.  We also address whether lost evidence deprived the Defendant of a fair trial. We modify the judgment on one of the vandalism convictions to properly reflect the jury's verdict, although this modification does not change the effective sentence of twenty years.  Otherwise, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court**
**Affirmed as Modified**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOHN EVERETT WILLIAMS, J., joined.

D. Michael Dunavant, Ripley, Tennessee, for the appellant, Reginald Derell Baldon.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Tracey A. Brewer, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

At trial, the State presented proof of three separate burglaries committed during May 2001 in Ripley, Tennessee.

# I.  FACTS
## A.  Tennessee Electroplating

The first burglary occurred on or about May 20th at Tennessee Electroplating. Employee William Broadnax testified he was the last person to leave the company's warehouse at approximately 11:00 p.m. on May 19th, and he was the first to arrive the following morning. When Broadnax entered the building, he noticed that a soft drink machine and a pay telephone were missing. He said he found the soft drink machine at the far end of the warehouse and noticed it was damaged. Broadnax also observed the surveillance recorder had been moved. According to Broadnax, he saw the Defendant at the Tina Turner Center near the warehouse on the night of the break-in.

Greg Woodard, a supervisor at Tennessee Electroplating, also testified the soft drink machine was damaged and a pay telephone was missing. Woodard stated it appeared someone had attempted to disconnect the video surveillance equipment. According to Woodard, the videotape recorded from the surveillance cameras showed the Defendant entered the warehouse at 11:13 p.m., damaged a vending machine, took money from the machine, and left the building. He said the tape also showed the Defendant returned around 1:30 a.m. Woodard indicated he knew the Defendant from school.

Human Resource manager Tom Thebeau testified that after he learned of the break-in, he went to the warehouse and noticed the forklift had been moved. Thebeau stated he viewed the surveillance tape, which showed a person using the forklift. Thebeau said he recognized the Defendant, a former employee, as being the person on the tape. Investigator Steve Sanders also identified the Defendant as the person shown on the tape.

Jamie Scott of BellSouth Public Communications testified BellSouth's cost to replace the missing telephone was $931. Scott also estimated the machine contained $40. Charles Norman of the Coca-Cola Bottling Company of Memphis testified the company had to replace its soft drink machine at a cost of $1,458. Don Sanders of Burch Food Services testified that less than $500 was taken from the soft drink machine.

## B.  Ripley High School

The second burglary occurred May 22nd at Ripley High School. Former principal Allen Wallace testified he arrived at the school at approximately 5:30 a.m. to find the Defendant and another man breaking into vending machines. Wallace noticed the fronts of the vending machines were "ripped out" and a large claw hammer and other tools were strewn near the machines. Wallace stated he immediately fled the building and contacted the police. Wallace said he later identified the Defendant as one of the intruders from a book of photographs and again in a photograph array.

Investigator Jeff Fain testified he found shoe tracks which indicated the perpetrators entered the school from the back of the building. Janet Randle, the owner of one of the vending machines, testified she replaced the machine at a cost of $2,145. She calculated over $128 was taken from the machine. James White, service manager for a soft drink bottler, testified two of his company's soft

drink machines were damaged beyond repair. He estimated the cost of replacing the machines was $2,760 and that over $390 was taken from the machines.

## C. Ripley Power and Light Company

The third burglary occurred at Ripley Power and Light Company ("Ripley Power") on or about May 23rd. Morris Worlds, an employee of Ripley Power, testified that when he arrived at work that morning, he noticed a large hole in a soft drink machine and tools strewn nearby. Worlds also found drawers, a filing cabinet, and the vault were open. He said the filing cabinet, which had been pried open, was replaced at a cost of $291 and it would cost $3,500 to replace the drink machine. According to Worlds, two time-lapse videorecorders and two standard videocassette recorders were taken. He explained the time-lapse recorders, which cost $990 each, were used for security.

Mike Allmand, the president of the company, testified two time-lapse recorders and one standard videocassette recorder were stolen. Allmand said two of the recorders were still in boxes. He also testified that $26,545 in cash and some gold coins were taken from a locked safe.

Investigator Fain testified that when he arrived at the scene, he identified a broken window as the point of entry. Fain noticed that a soft drink machine was destroyed and the office was ransacked. Fain lifted fingerprints from the inside of the filing cabinet drawer which had been pried open. TBI special agent Robert McFadden testified the fingerprints found in the drawer belonged to the Defendant.

Randy Singleton testified that after midnight on May 23rd, the Defendant gave him, Jessie Jones, and Anthony Link two videorecorders which bore tags from Ripley Power. According to Singleton, the Defendant had $3,000 to $4,000 cash in denominations of twenty dollars or less. Singleton said he, Jones, and Link later abandoned the equipment in a ditch on the side of the highway when they were unable to sell it. Singleton acknowledged he pled guilty to possessing the stolen videorecorders.

Quantel Taylor and Keysha Harlan, who lived together, testified that at approximately 3:00 a.m. on May 23rd, the Defendant and Singleton awoke them and attempted to sell them a videorecorder. Taylor stated the Defendant had two videorecorders in boxes and a third very large recorder. Odean Cooper also testified the Defendant tried to sell him electronic equipment in a box.

## D. Jury Verdict

The jury convicted the Defendant of the burglary of Tennessee Electroplating, vandalism over $1,000 for damaging the soft drink machine, and two counts of theft under $500 for the theft of money from the soft drink machine and the theft of the pay telephone. The jury convicted the Defendant of the burglary of Ripley High School, two counts of vandalism over $1,000 for damaging the vending machines, and two counts of theft under $500 for taking money from the vending machines. In regard to the break-in at Ripley Power, the jury convicted the Defendant of burglary, theft over $1,000 for stealing the two time-lapse videorecorders, and vandalism over $500

for damaging the soft drink machine and the filing cabinet. It found the Defendant not guilty of stealing over $10,000 from the Ripley Power safe.

The trial court sentenced the Defendant to an effective twenty-year sentence as a Range III persistent offender.

## II. SUFFICIENCY OF THE EVIDENCE

The Defendant contends the evidence was insufficient to support his convictions. More specifically, he maintains the State presented insufficient circumstantial evidence of his identity as the perpetrator, and the State's evidence was insufficient to prove the essential elements of the offenses beyond a reasonable doubt. This issue is without merit.

In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). The appellant has the burden of overcoming this presumption of guilt. Id.

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

### A. Identity

The Defendant argues the State's circumstantial evidence that he was the person who committed the crimes was insufficient to establish his guilt. However, two witnesses who knew the Defendant testified they observed the Defendant on Tennessee Electroplating's surveillance tapes. Allen Wallace testified he saw the Defendant, whom he later identified from photographs, breaking into vending machines in the high school. In addition to direct evidence of the Defendant's identity as the perpetrator of the offenses at Ripley High School and Tennessee Electroplating, there was proof that the Defendant's fingerprints were found inside a filing cabinet drawer at Ripley Power. There was also evidence the Defendant possessed videorecorders bearing tags from Ripley Power within hours of the burglary. The evidence amply supports the jury's conclusion that the Defendant was a perpetrator in all offenses.

## B. Elements of the Offenses

The Defendant summarily maintains that no rational trier of fact could have found the essential elements of theft, vandalism, and burglary beyond a reasonable doubt based on the evidence presented at trial. This argument also lacks merit.

### 1. Theft

A person commits theft if he knowingly obtains or exercises control over property without the owner's effective consent and with the intent to deprive the owner of property. Tenn. Code Ann. § 39-14-103. Theft is punished according the value of the property stolen. Id. § 39-14-105.

Tennessee Electroplating employees testified that after the break-in, they noticed a soft drink machine was damaged and a pay telephone was missing. Don Sanders of Burch Food Services indicated that money was taken from the vending machine. While his company could not determine the exact amount that was missing due to the damage caused to the machine, he stated the amount was less than $500. Jamie Scott of BellSouth testified the telephone contained approximately $40 at the time it was taken. This proof was sufficient to establish the Defendant was guilty of two counts of theft under $500 as alleged in the indictment.

The Defendant was convicted of two additional counts of theft under $500 for taking money from vending machines at Ripley High School. Allen Wallace observed the Defendant and another man breaking into the machines. There was also proof that over $128 was taken from a snack machine owned by Janet Randle and over $390 was taken from the soft drink machines. This proof was sufficient to support the convictions.

The jury also convicted the Defendant of theft over $1,000 for stealing two time-lapse videorecorders from Ripley Power. Morris World testified two time-lapse recorders, valued at over $990 each, were missing following the break-in. Randy Singleton testified the Defendant gave him two recorders which were marked as belonging to Ripley Power. Other witnesses also testified they saw the Defendant with videorecorders shortly after the time of the offense.

### 2. Vandalism

A person commits vandalism when he knowingly damages or destroys personal property without the owner's effective consent. Tenn. Code Ann. § 39-14-408(a). Vandalism, like theft, is punished according to the value of the item destroyed or damaged. Id. § 39-14-408(c)(1).

The jury convicted the Defendant of one count of vandalism over $1,000 for damaging the soft drink machine at Tennessee Electroplating. Greg Woodard testified the surveillance video showed the Defendant damaging the machine. There was proof the machine was replaced at a cost of $1,458. This proof was sufficient to support the conviction.

The Defendant was convicted of two counts of vandalism over $1,000 for causing damage to three vending machines at Ripley High School. Allen Wallace testified he saw the Defendant and his companion ripping the machines apart. Witnesses testified that the parts of the machines which held money were removed. Janet Randle stated that the cost of replacing her machine was over $2,000. James White testified that the cost of replacing the other machines was over $2,700. This proof was sufficient to support the convictions.

The Defendant was convicted of vandalism over $500 resulting from the damages to the soft drink machine and a filing cabinet at Ripley Power. Morris Worlds testified he noticed a large hole in the company's soft drink machine when he entered the warehouse on the morning after the break-in, and Investigator Fain also noticed the machine was destroyed. Worlds said the replacement cost for the machine was $3,500. Worlds and Fain testified that a filing cabinet had been pried open, and Worlds said it was replaced for $291. We conclude this proof was sufficient to support this conviction.

## 3. Burglary

A person commits burglary when, without the effective consent of the property owner, he enters a building with the intent to commit theft. Tenn. Code Ann. § 39-14-402(a)(1). The Defendant was convicted of three counts of burglary for entering the three buildings with the intent to commit theft. The State's unrefuted proof clearly established the Defendant entered all three buildings without the consent of the property owners and committed the thefts. Therefore, there was sufficient proof to support the Defendant's burglary convictions.

## III. DISCOVERY VIOLATION

The Defendant contends the State violated Rule 16 of the Tennessee Rules of Criminal Procedure regarding discovery when it waited until the day before trial to inform him that Officer Rita Burnett found a red jacket at Ripley Power which was similar to a jacket she had seen the Defendant wear. At trial, defense counsel objected to Officer Burnett's testimony and stated,

> . . . [W]e were not provided with this information prior to trial. I received this [facsimile] from the [prosecutor] yesterday indicating that she had just received information about evidence about [the Defendant's] coat. I wasn't told until this morning what the significance of this coat was, on the morning of trial.

> We object because we weren't given an opportunity to review this evidence. I've never seen the coat. I don't know in what context it is being sought to be used to identify him or link him to this crime. . . .

The trial court overruled the Defendant's objection and allowed the State to present Officer Burnett's testimony that she saw a red jacket at the crime scene which was similar to one she had previously seen the Defendant wear. Officer Burnett further testified she gave the jacket to Investigator Fain, and it had since been lost.

Upon the Defendant's request, the State must permit the Defendant to inspect tangible objects within its possession, custody, or control which are material to the preparation of the defense, or the State intends to use as evidence in chief at trial, or which belong to the Defendant. Tenn. R. Crim. P. 16(a)(1)(C). The trial court entered a pre-trial order requiring the State to provide the Defendant with discovery pursuant to Rule 16, and the Defendant subsequently filed a discovery motion. The record indicates law enforcement lost the jacket, and it is unclear whether the State was in possession of the jacket at the time of the discovery request. We cannot conclude the State violated Rule 16; the State cannot allow inspection of an object it does not have.

Even if there had been a discovery violation, it was within the trial court's discretion to fashion an appropriate remedy, including exclusion of the evidence or granting a continuance. Tenn. R. Crim. P. 16(d)(2). The Defendant did not request a continuance, and the trial court generally should not exclude the evidence absent a showing that the Defendant was prejudiced to the extent that no other remedy would suffice. State v. Smith, 926 S.W.2d 267, 270 (Tenn. Crim. App. 1995). We further conclude the evidence against the Defendant was overwhelming, and the limited testimony about the jacket did not affect the outcome of the trial. The record does not establish the Defendant was prejudiced. See Tenn. R. App. P. 36(b).

## IV. LOST EVIDENCE

Although not addressed by either party, we conclude that the facts before us present the issue of whether the State's loss of the evidence deprived the Defendant of a fair trial. The State generally has a duty to preserve evidence subject to discovery and inspection. State v. Ferguson, 2 S.W.3d 912, 917 (Tenn. 1999). This includes evidence with an apparent exculpatory value at the time it was lost. Id. If the State has breached this duty, the court must consider several factors in determining the appropriate remedy to protect the Defendant's right to a fundamentally fair trial:

1. The degree of negligence involved;
2. The significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and
3. The sufficiency of the other evidence used at trial to support the conviction.

Id.

There is no indication in the record before us that the jacket had any exculpatory value or that the State discarded the evidence in bad faith. Further, as we have discussed at length, there was overwhelming evidence that the Defendant was the person who committed the crimes at Ripley Power. Finally, the State's evidence linking the Defendant to the jacket found by Officer Burnett was very limited. Officer Burnett testified that while she had seen the Defendant from a distance wearing a similar jacket, she was not sure it was the same jacket. We conclude the State's failure to preserve the evidence did not deprive the Defendant of his right to a fundamentally fair trial.

## V. PROSECUTOR'S IMPROPER CLOSING ARGUMENT

During closing argument, the prosecutor stated, "And whose word is the defense asking you to take? His? He's not the one that took the stand, is he? He's not the one that swore under oath

that he would tell the truth." The Defendant objected, contending the prosecutor commented upon the Defendant's failure to testify. The trial court sustained the objection and immediately instructed the jury to "ignore that remark absolutely." Then, at a bench conference, the trial court denied the Defendant's motion for a mistrial. The Defendant contends the trial court erred in denying his motion.

The determination of whether to grant a mistrial rests within the sound discretion of the trial court. State v. Smith, 871 S.W.2d 667, 672 (Tenn. 1994). The reviewing court should not overturn that decision absent an abuse of discretion. State v. Reid, 91 S.W.3d 247, 279 (Tenn. 2002).

It is "constitutionally impermissible for a prosecutor to comment upon an accused's silence during the course of a trial." State v. Transou, 928 S.W.2d 949, 960 (Tenn. Crim. App. 1996); see also Griffin v. California, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). Although the State contends this comment was in response to defense counsel's attack upon the credibility of the State's witnesses, in our view the comment was a blatant and impermissible comment upon the accused's exercise of his right not to testify. The trial court properly sustained the Defendant's objection to the remark and instructed the jury to disregard it. We agree with the trial court's implicit ruling; the blow struck by the prosecutor was foul.

Since we conclude the prosecutor's remarks were improper, we must determine whether the error prejudiced the Defendant. Although this was constitutional error, it may be harmless if harmlessness is established beyond a reasonable doubt. Transou, 928 S.W.2d at 960.

The State's proof against the Defendant was nothing short of overwhelming. The prosecutor made only one improper remark, which elicited a prompt objection by the Defendant. The trial court quickly responded by sustaining the objection and instructing the jury to disregard the improper comment. Given these circumstances, we conclude beyond a reasonable doubt that the Defendant suffered no prejudice. The trial court did not err in denying the request for a mistrial.

## VI. JURY CHARGE REGARDING LESSER-INCLUDED OFFENSES

The Defendant maintains the trial court erred in refusing to instruct the jury regarding aggravated criminal trespass of a school campus, see Tenn. Code Ann.§ 39-14-406, as a lesser-included offense of the burglary of Ripley High School. The trial court has a duty to instruct the jury on any lesser-included offenses of the charged offense when such instruction is supported by the evidence, regardless of whether the Defendant has requested such an instruction. State v. Bowles, 52 S.W.3d 69, 74 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 464 (Tenn. 1999). The standard for an appellate court's review of the trial court's charge to the jury regarding lesser-included offenses is *de novo* with no presumption of correctness. State v. Moore, 77 S.W.3d 132, 134 (Tenn. 2002).

If an offense is found to be a lesser-included offense, the court must next ascertain whether the evidence justifies a jury instruction on the lesser-included offense. Bowles, 52 S.W.3d at 75. To do so, the court must first determine whether there is evidence that "reasonable minds" could

accept to establish the lesser-included offense.  Burns, 6 S.W.3d at 469.  The court must view the evidence liberally in a light most favorable to the existence of the lesser-included offense without judging its credibility.  State v. Ely, 48 S.W.3d 710, 722 (Tenn. 2001); Burns, 6 S.W.3d at 469.  Finally, the court must determine if the evidence is "legally sufficient" to support a conviction for the lesser-included offense.  Burns, 6 S.W.3d at 469.

The evidence, not the theories of the parties, determines whether an instruction on a lesser-included offense should be given.  State v. Allen, 69 S.W.3d 181, 188 (Tenn. 2002).  Furthermore, the decision to convict on a lesser-included offense should not be taken from the jury simply because the element distinguishing the greater offense from the lesser offense is "uncontroverted."  Id. at 189.  If the evidence justifies an instruction, the failure to charge the offense is error even though the evidence was also sufficient to support the greater offense.  Burns, 6 S.W.3d at 472.

The question of whether aggravated criminal trespass is a lesser-included offense of burglary is currently before our state supreme court.  See State v. Reginald D. Terry, No. W2001-03027-CCA-RM-CD, 2002 Tenn. Crim. App. LEXIS 749 (Tenn. Crim. App. Aug. 27. 2002, at Jackson), app. for perm. to app. granted (Tenn. Dec. 16, 2002).  However, under the facts of this case, whether or not it is a lesser-included offense is not determinative.

To commit the offense of aggravated criminal trespass, the defendant must "intend, know, or [be] reckless about whether [his] presence will cause fear for the safety of another" when he illegally enters or remains in a building.  Tenn. Code Ann. § 39-14-406(a)(2).  It is questionable whether a reasonable jury could find the Defendant possessed the necessary *mens rea* regarding whether his presence would cause fear for another person's safety when he entered Ripley High School.  Allen Wallace testified he found the Defendant and his cohort breaking into the vending machines in the teacher's workroom at 5:30 a.m.  These facts would indicate the Defendant and his companion intended to commit the offense when the school was unoccupied.

Regardless, we conclude that even if it were error in the failure to charge aggravated criminal trespass, it was harmless beyond a reasonable doubt.  Harmless error relating to the failure to charge lesser-included offenses must be shown "beyond a reasonable doubt."  Ely, 48 S.W.3d at 727.  The proper inquiry is "whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial."  Allen, 69 S.W.3d at 191.  In making the harmless error determination, this court must "conduct a thorough examination of the record, including the evidence presented at trial, the Defendant's theory of defense, and the verdict returned by the jury."  Id.

In sum, when a reviewing court determines whether a lesser-included offense ought to be charged, the evidence clearly controls. If there is evidence sufficient to support a conviction for a lesser-included offense, we hold that a trial court must charge that offense. The determinative test being whether there is evidence sufficient such that a jury *could* convict on that lesser-included offense. If a jury could convict, no matter how improbable, it is error not to charge that lesser-included offense. However, in deciding whether it was harmless beyond a reasonable doubt not to charge a lesser-included offense, the reviewing court must determine whether a reasonable jury *would* have convicted the defendant of the lesser-included offense

instead of the charged offense. In other words, the reviewing court must determine whether it appears beyond a reasonable doubt that the trial court's failure to instruct on the lesser-included offense did not affect the outcome of the trial. Allen, 69 S.W.3d at 191.

State v. Richmond, 90 S.W.3d 648, 662 (Tenn. 2002) (emphasis in original).

The evidence overwhelmingly established a burglary. It is undisputed the school was unlawfully entered, and it is undisputed that a theft occurred therein. The Defendant's theory of defense was misidentification. The jury clearly found this defense to be without merit. Thus, we conclude beyond a reasonable doubt that no reasonable jury would have convicted the Defendant of aggravated criminal trespass instead of the charged offense of burglary.

## VII. JUDGMENT ERROR

With regard to the vandalism count at Ripley Power, the indictment alleged vandalism over $1,000. However, the transcript of the jury's announcement indicated a guilty verdict of vandalism over $500, not $1,000. Likewise, the verdict form signed by the foreperson indicates vandalism over $500, not $1,000. Vandalism over $500 is a Class E felony, see Tenn. Code Ann. §§ 39-14-105(a)(2), -408(c)(1), with a range of punishment of four to six years as a Range III persistent offender, see id. § 40-35-112(c)(5). However, the trial court mistakenly sentenced the Defendant to ten years for vandalism over $1,000, a Class D felony, see id. §§ 39-14-105(a)(3), -408(c)(1), which has a range of punishment of eight to twelve years as a persistent offender, see id. § 40-35-112(c)(4). The erroneous sentence imposed by the trial court had no effect upon the effective twenty-year sentence because it ran concurrently with other sentences. We remand for entry of an amended judgment for Count 9 of Indictment No. 7226 to reflect a sentence of four years for vandalism over $500 to run concurrently with other sentences in that indictment.

## VIII. CONCLUSION

We conclude the evidence was sufficient to support the Defendant's convictions. Further, the State did not violate Rule 16 of the Tennessee Rules of Criminal Procedure, nor did the State's loss of physical evidence deprive the Defendant of a fair trial. The trial court did not err in denying the Defendant's motion for a mistrial based on the improper remark by the prosecutor during closing argument. Finally, the trial court committed no reversible error in refusing to charge the jury as to aggravated criminal trespass as a lesser-included offense of burglary. We do, however, remand for entry of an amended judgment to properly reflect a sentence of four years for vandalism over $500 for Court 9 of Indictment No. 7226. Otherwise, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE