IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 2, 2004

## STATE OF TENNESSEE v. KENDRICK NAYLOR

**Appeal from the Criminal Court for Shelby County**
**No. 01-06617   James C. Beasley, Jr., Judge**

_____

**No. W2004-00329-CCA-R3-CD  - Filed February 24, 2005**

_____

The appellant, Kendrick Naylor, was convicted by a jury of criminal attempt to commit assault, felony evading arrest, and theft of property over $10,000. The trial court sentenced the appellant to four (4) years as a Range II multiple offender for the evading arrest conviction and six (6) months for the attempt to commit assault conviction, to run concurrently to the sentence for evading arrest. The trial court sentenced the appellant to eight (8) years for the theft of property conviction, to be served consecutively to the four-year sentence for evading arrest, for a total effective sentence of twelve (12) years. After a motion for new trial was denied by the trial court, a timely notice of appeal was filed. On appeal, the following issues are presented for review: (1) whether the trial court erred in denying the appellant's motion for a mistrial; (2) whether the evidence was sufficient to sustain the convictions; and (3) whether the trial court erred in imposing consecutive sentences. We affirm the judgment of the trial court and the appellant's sentence because we determine that the appellant's history of criminal convictions more than justifies the sentence imposed.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. C. MCLIN, JJ., joined.

Juni S. Ganguli, Memphis, Tennessee, for the appellant, Kendrick Naylor.

Paul G. Summers, Attorney General & Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General, and Betsy Carnesale and Paul Hagerman, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

On October 3, 2000, Sergeant Eddie Bass of the Memphis Police Department was actively searching for the appellant on an outstanding warrant. Sergeant Bass received a tip that the appellant was at the Wingood Apartments, so Sergeant Bass contacted another detective and four uniformed officers. The officers met and proceeded to the Wingood Apartments and set up a perimeter around the building that the appellant was seen entering. Three of the officers, including Sergeant Bass, went up to the second floor apartment to locate the appellant. The two remaining officers stayed on the ground outside the apartment building. As Sergeant Bass was knocking on the door of apartment number six (6), he heard officers on the ground shout that the appellant had jumped out of the window of apartment number four (4) to the ground below. A foot chase ensued. The officers chased the appellant, yelling at him to stop or "freeze" as he headed across the apartment grounds to the parking lot. Sergeant Bass saw the appellant get into the driver's side of a maroon Toyota Camry. Sergeant Bass managed to open the passenger door of the vehicle and get half of his body into the vehicle before the appellant could start the vehicle and put it into reverse. The two struggled over the gear shift sending the vehicle into reverse, nearly striking Detective Miguel Aguila, who was witnessing the events unfold from the rear of the vehicle. The appellant was able to shift gears again and the vehicle began to move forward. As it did so, Sergeant Bass rolled out of the vehicle to avoid injury.

As the vehicle moved forward, it went over a curb and onto a grassy area. Officer Bob Parker, who was standing in front of the vehicle, was forced to jump onto the hood to avoid being hit by the appellant. Officer Parker hit the windshield with his shoulder and then kicked it with his foot before he "rolled off" the car. The vehicle then turned to the left, nearly striking Officer Antoine Owens. Officers Parker and Owens fired several shots at the car in an attempt to stop the appellant. The appellant continued to drive the vehicle across the grassy area until he crashed into one of the apartment buildings. The appellant then exited the vehicle and ran on foot until the police caught him. The appellant sustained a gun shot wound during the incident.

Following his arrest, the appellant was interviewed by the Memphis Police. During the interview, the appellant admitted that he jumped out of the window and ran from the police. He claimed that he ran because he was scared, stating:

> [T]he Hispanic officer that was in the car with me, he shot at me when I was at Extended Stay America and he told my mother and everything he was going to kill me. He told Monica [the resident of Wingood Apartments], that I should have been

dead, and that he was going to kill me. When I realized who he was, I panicked because I was scared.

The appellant was indicted by the Shelby County Grand Jury on June 26, 2001, for three incidents of aggravated assault, felony evading arrest in a motor vehicle and two counts of theft of property over $10,000.

A jury trial was held in November of 2003. At trial, the jury heard testimony from Sergeant Bass, Detective Aguila, Officer Parker and Officer Owens regarding the incident. Steve Street, a construction foreman doing work at Wingood Apartments, was putting trash in the dumpster when he saw several police officers chasing a black male across the apartment grounds. Mr. Street testified at trial that he saw the appellant get into a red vehicle and drive over a curb nearly striking several of the officers. Mr. Street also heard the vehicle hit the building. Mr. Street remembered that the officers ordered the appellant to stop and did not fire their weapons until he began to drive away.

Marilyn Smith testified on behalf of the appellant. She was in the apartment with the appellant at the time the police arrived. Ms. Smith informed the appellant that the police were "coming for him" because she was aware that the appellant was a wanted man. She saw the appellant pace the floor for a few seconds before he jumped out of the window. Ms. Smith testified that she heard shots fired immediately after the appellant jumped out of the window.

The maroon Toyota Camry driven by the appellant belonged to Enterprise Car Rental. At trial, Mydris Boltze, the loss prevention coordinator for Enterprise, testified that the vehicle was rented by Jeffrey Biernesser on May 2, 2000, and had not been returned as scheduled. Ms. Boltze contacted Mr. Biernesser about the vehicle in July of 2000, and she was informed that the appellant was in possession of the vehicle. Ms. Boltze actually talked to the appellant on July 31, 2000, and August 3, 2000, each time telling him that the vehicle had been reported stolen and that he should return it. Ms. Boltze stated that the car was worth $17,000 to $18,000.

At the conclusion of the proof, the trial court dismissed count one of each of the aggravated assault indictments.[1] The jury found the appellant not guilty of two counts of aggravated assault, guilty of criminal attempt to commit assault, a Class B misdemeanor, evading arrest in a motor vehicle, a Class E felony, and two counts of theft of property over $10,000, a Class C felony.

After a sentencing hearing, the trial court sentenced the appellant to four (4) years as a Range II multiple offender for the evading arrest conviction, six (6) months for the attempt to commit assault conviction, to run concurrently to the sentence for evading arrest and eight (8) years for the

---

[1]Each indictment charged alternative theories of aggravated assault in two counts.

theft of property conviction,[2] to be served consecutively to the four-year sentence, for a total effective sentence of twelve (12) years. The trial court denied the appellant's motion for new trial and this appeal followed. On appeal, the following issues are presented for review: (1) whether the trial court erred in denying the appellant's motion for a mistrial; (2) whether the evidence was sufficient to sustain the convictions; and (3) whether the trial court erred in imposing consecutive sentences.

Denial of Mistrial

The appellant argues that the trial court erred by denying a motion for mistrial after Sergeant Bass testified that the appellant was "booked for an aggravated kidnapping charge" at the time of the incident. Specifically, the appellant claims that the trial court erred because the trial court had granted a pre-trial motion filed by the appellant to limit the testimony of prosecution witnesses as to the basis of the underlying arrest warrant. The State argues that the trial court "properly ruled that a mistrial was not necessary based on the testimony."

At trial, Sergeant Bass testified that on the date of the incident, he was looking for the appellant because he was "booked for an aggravated kidnapping charge." Defense counsel immediately objected and requested a mistrial. The trial court denied the request and admonished the jury not to consider the statement. Specifically, the trial court told the jury that the testimony "with regard to why they were on the scene has absolutely no bearing, whatsoever, on the facts of the case that we're trying" and that the facts that are "alleged in the indictment" are "the only" facts that they were to consider.

The decision whether to grant a mistrial is within the discretion of the trial court and that decision will not be disturbed on appeal unless there was an abuse of discretion. State v. Reid, 91 S.W.3d 247, 279 (Tenn. 2002); State v. Smith, 871 S.W.2d 667, 672 (Tenn. 1994). Moreover, the burden of establishing the necessity for a mistrial lies with the party seeking it. State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). "The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." Williams, 929 S.W.2d at 388. Generally, a mistrial will be declared and the jury discharged in a criminal case only if there is "manifest necessity" requiring such action by the trial judge. State v. Millbrooks, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991) (quoting Arnold v. State, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977)).

In the case herein, the appellant has not shown a "manifest necessity" for a mistrial to be declared. The statement made by Sergeant Bass was brief and did not prejudice the appellant. Further, the lack of prejudice is demonstrated by the fact that the jury acquitted the appellant on all of the aggravated assault charges. Morover, the trial court gave a curative instruction to the jury. The trial court's curative instruction was sufficient to counter the potential for prejudice, and the law presumes that juries follow the instructions that they receive absent clear and convincing proof to the contrary. See State v. Hall, 976 S.W.2d 121, 148 (Tenn. 1998); State v. Vanzant, 659 S.W.2d

---

[2] The trial court merged the two counts of theft of property over $10,000 into one conviction.

816, 819 (Tenn. Crim. App. 1983). This issue is without merit. Finally, discussed in the next section of this opinion, the evidence of the appellant's guilt of the offenses for which he was convicted is overwhelming.

### Sufficiency of the Evidence

The appellant next contends that the evidence was not sufficient to support the jury verdict on the charges of theft of property and evading arrest. Specifically, he argues that the evidence was insufficient to support the theft conviction because the vehicle had been rented by another individual. Further, the appellant argues that he should not have been convicted of evading arrest because he was running from the officers to avoid being shot rather than to avoid being arrested. The State counters that the evidence supports the jury verdict.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the state. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. Further, questions concerning witness credibility are resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

The appellant was convicted of theft of property over $10,000 in violation of Tennessee Code Annotated section 39-14-103. According to Tennessee Code Annotated section 39-14-103, in order to prove that the appellant was guilty of the offense, the State was required to prove beyond a reasonable doubt that the appellant: (1) knowingly obtained or exercised control over the property; (2) did not have the owner's effective consent; and (3) intended to deprive the owner of the property. Tenn. Code Ann. § 39-14-103. The appellant was indicted on alternate theories that he either obtained the 2000 Toyota Camry without the owner's effective consent with the intent to deprive the owner of the property or that he exercised control over the property without the owner's effective consent with the intent to deprive the owner of the property. The jury convicted the appellant on both counts of theft of property.

The appellant argues that the vehicle was rented by Mr. Beirnesser and that Mr. Biernesser failed to return the car. However, the appellant obtained the vehicle from Mr. Biernesser without the effective consent of Enterprise Car Rental even after being contacted by Enterprise Car Rental on two separate occasions. Mydris Boltze testified that she spoke with the appellant on July 31 and August 3, each time notifying the appellant that the vehicle had been reported stolen. The appellant retained possession of the vehicle even after receiving notification from the owner of the vehicle that it had been reported stolen, showing a clear intent to deprive the owner of the property. The evidence of guilt on this charge is overwhelming.

The appellant also argues that he should not have been convicted of evading arrest because he raised the defense of necessity, asserting that he was not evading arrest, but avoiding being shot by the officers. Tennessee Code Annotated section 39-16-603(b)(1) makes it "unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop." Tenn. Code Ann. § 39-16-603(b)(1).

The evidence at trial indicated that the appellant jumped out the window and ran to the vehicle as the police were getting ready to knock on the door of the apartment where the appellant was located. The appellant got into the vehicle, ignoring repeated requests of the police to stop or "freeze." The appellant struggled to get the vehicle into gear when Sergeant Bass managed to get half-way into the vehicle and grab onto the gear shift. Even after the struggle ended, the appellant drove the vehicle over a curb, nearly striking two officers. The appellant did not even stop the vehicle when the officers began to fire their weapons at him. Further, even after the appellant crashed the vehicle into the apartment building, he exited the vehicle and tried to run on foot. The only evidence that supports the appellant's contention that he ran out of "necessity" is his own statement alleging that he was afraid that the "hispanic officer" would shoot him because of prior confrontations between the two. Implicit in the jury verdict is the determination that the appellant's statement was not credible. The proof was overwhelming that the appellant evaded arrest in an automobile. Therefore, we cannot say that the evidence preponderates against the jury verdict. This issue is without merit.

<u>Sentencing</u>

Finally, the appellant argues that the trial court erred by imposing "excessive" sentences. Specifically, the appellant complains that the trial court ordered his sentences to be served consecutively. The appellant argues that the consecutive sentences imposed were not "reasonably related to the severity of the offenses committed." The State counters that the record "supports the trial court's finding that the defendant has an extensive criminal record deserving of consecutive sentences."

"When reviewing sentencing issues . . . , the appellate court shall conduct a <u>de novo</u> review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. §

40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

At the outset, we note that the appellant does not make any argument concerning the validity of his sentence under the United States Supreme Court's recent decision in Blakely v. Washington, 542 U.S. ___ , 124 S.Ct. 2531 (2004).[3] Prior to the release of Blakely, in order to determine a defendant's sentence, a trial court started at the presumptive sentence, enhanced the sentence within the range for existing enhancement factors, and then reduced the sentence within the range for existing mitigating factors in accordance with Tennessee Code Annotated section 40-35-210(e). No particular weight for each factor is prescribed by the statute; the weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our Code and as long as its findings are supported by the record. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). This Court has recently recognized that Blakely "calls into question the continuing validity of our current sentencing scheme." State v. Julius E. Smith, No. E2003-01059-CCA-R3-CD, 2004 WL 1606998, at *4 (Tenn. Crim. App. at Knoxville, July 19, 2004); see also State v. Michael Wayne Poe, No. E2003-00417-CCA-R3-CD, 2004 WL 1607002, at *9 (Tenn. Crim. App. at Knoxville, July 19, 2004).

Because we believe that the decision in Blakely has compromised the validity of Tennessee's current sentencing scheme we have determined that we must sua sponte analyze the appellant's sentence. Because this issue was not raised by the appellant, the only way the issue may be addressed is through a plain error analysis. In exercising our discretion as to whether plain error review under Tennessee Rule of Criminal Procedure 52(b) is appropriate, the Tennessee Supreme Court has directed that we examine five factors: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000) (citing State v. Adkisson, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994)). All five (5) factors must be present for plain error review. Smith, 24 S.W.3d at 283.

---

[3] The State notes that "the defendant apparently does not contest the enhancement factors applied by the trial court" but that Blakely "would not apply" to the appellant's enhanced sentence for theft and that the four (4) year sentence on the evading arrest charge is "justified" even if the trial court improperly applied enhancement factors.

For a "substantial right" of the accused to have been affected, the error must have prejudiced the appellant. In other words, it must have affected the outcome of the trial court proceedings. United States v. Olano, 507 U.S. 725, 732-37 (1993) (analyzing the substantially similar Federal Rule of Criminal Procedure 52(b)); Adkisson, 899 S.W.2d at 642. This is the same type of inquiry as the harmless error analysis under Tennessee Rule of Appellate Procedure 36(b), but the appellant bears the burden of persuasion with respect to plain error claims. Olano, 507 U.S. at 732-37.

In Blakely, the Supreme Court determined that the "statutory maximum" sentence for Apprendi[4] purposes is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U .S. at ___, 124 S.Ct. at 2537. In other words:

> [T]he relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

Id. Blakely involved the sentencing scheme of the State of Washington where the criminal code establishes maximum sentences for felonies according to the class of felony. Washington also has presumptive sentencing ranges based on the seriousness level of the offense and the offender's criminal history. In Washington, a judge is permitted to impose a sentence above the presumptive range when there exists "substantial and compelling reasons justifying an exceptional sentence." Blakely, 542 U.S. at ___, 124 S.Ct. at 2535. A judge may impose an exceptional sentence utilizing one of these "reasons" illustrated in the Sentencing Reform Act only if it is not already taken into account in the calculation of the presumptive range.

Blakely pled guilty to second-degree kidnapping with a firearm. As a Class B felony, it was punishable by a sentence of up to 10 years. The Sentencing Reform Act of Washington, however, specified a presumptive range of 49 to 53 months. The sentencing judge imposed an exceptional sentence of 90 months on the ground that the defendant had acted with "deliberate cruelty," a statutorily enumerated ground for upward departure. The Supreme Court ultimately determined that Washington's sentencing procedure violated the defendant's Sixth Amendment right to a trial by jury. Id. 542 U.S. at ___, 124 S.Ct. at 2538.

_____

[4] In Apprendi v. New Jersey, 530 U.S. 466 (2000), the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. In Ring v. Arizona, 536 U.S. 584, 587 (2002), the Court applied Apprendi to hold that because Arizona conditioned eligibility for the death penalty upon the presence of an aggravating fact that was not an element of first degree murder, the Sixth Amendment guaranteed the defendant a right to a jury determination of that fact.

This Court has acknowledged that <u>Blakely</u> "extended <u>Apprendi's</u> holding that, under the Sixth Amendment, a jury must find all facts used to increase a defendant's sentence beyond the statutory maximum." <u>See</u> <u>State v. Charles Benson</u>, No. M2003-02127-CCA-R3-CD, 2004 WL 2266801, at *8 (Tenn. Crim. App. at Nashville, Oct. 8, 2004). In so doing, this Court went on to state that:

> [N]othing in <u>Apprendi</u> suggested that the phrase "statutory maximum" equated to anything other than the maximum in the range. To the contrary, the United States Supreme Court stated the issue in <u>Apprendi</u> as "whether the 12-year sentence imposed . . . was permissible, given that it was above the 10-year maximum for the offense charged in that count." 530 U.S. at 474, 120 S.Ct. at 2354. We also note that the Supreme Court has considered the retroactive effect of the holding in <u>Ring v. Arizona</u>, 536 U.S. 584, 592-93, 122 S.Ct. 2428, 2435 n.1, 153 L.Ed.2d 556 (2002), as a new rule for capital cases even though it was based on <u>Apprendi</u>. <u>See</u> <u>Schriro</u>, ___ U.S. at ___, 124 S.Ct. at 2525-27. . . . We conclude that <u>Blakely</u> alters Tennessee courts' interpretation of the phrase "statutory maximum" and establishes a new rule in this state. . . .

<u>Id.</u> at *8.

We now turn to the five factors required for plain error review. The record in the case herein clearly establishes what happened at trial. Further, because it has been determined that <u>Blakely</u> established a new rule of law, it is clear that a rule of law was violated. It is thus without question that a new rule established for sentencing affects a substantial right of the appellant. The fourth factor, the defendant did not waive the issue for tactical reasons, has been met. Finally, despite the trial court's application of enhancement factors in violation of <u>Blakely</u>,[5] we determine that review of this issue is not clearly necessary to do substantial justice because the appellant's prior record more than justifies a four-year sentence for evading arrest. The record establishes that appellant had at least eight (8) prior felony convictions and ten (10) prior misdemeanor convictions as set forth in the pre-sentence report. Thus, we will not review the sentence for plain error.

---

[5]The trial court relied on several enhancement factors when determining the appellant's sentence. As stated above, only enhancement factors that are reflected in the jury verdict or admitted by the defendant may be used to enhance the defendant's sentence. <u>Blakely</u>, 542 U.S. at ___, 124 S.Ct. at 2537. The trial court relied upon the following enhancement factors in sentencing the appellant on the conviction for evading arrest: (1) that the appellant had a previous history of criminal convictions in addition to those necessary to establish the appropriate range, Tenn. Code Ann. § 40-35-114(2); (2) the appellant had no hesitation about committing a crime in which the risk to human life was high, Tenn. Code Ann. § 40-35-114(11); and (3) the crime was committed under circumstances under which the potential for bodily injury to a victim was great, Tenn. Code Ann. § 40-35-114(17). The application of enhancement factors (11) and (17) is clearly in violation of <u>Blakely</u> as they were not reflected in the jury verdict or admitted by the appellant. <u>Blakely</u>, 542 U.S. at ___, 124 S.Ct. at 2537.

As to consecutive sentencing, we note that a trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that "the defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(4). However, before ordering the defendant to serve consecutive sentences on the basis that he is a dangerous offender, the trial court must find that the resulting sentence is reasonably related to the severity of the crimes, necessary to protect the public against further criminal conduct, and in accord with the general sentencing principles. See State v. Imfeld, 70 S.W.3d 698, 708-09 (Tenn. 2002); State v. Wilkerson, 905 S.W.2d 933, 938-39 (Tenn. 1995).

In the case herein, the trial court found that the appellant had an extensive criminal record, noting that the pre-sentence report reflected eight (8) prior felony convictions and ten (10) misdemeanor convictions. The trial court emphasized that on "at least three other occasions when officers attempted to arrest or detain . . . [the appellant], he has either fled or resisted or in some way attempted to elude them." The trial court also noted that the appellant had several prior theft convictions.

The trial court herein made specific findings when imposing consecutive sentences. The trial court stated:

> The Court further finds that . . . [the appellant] is an offender whose record of criminal activity is extensive as the Court has previously read into the record. And for that reason, based upon the long record of . . . [the appellant], the Court feels that consecutive sentencing is appropriate for this particular case and the length of sentencing in this case 12 years the aggravated manner in which the Intentionally Evading Arrest occurred and the Theft of Property, this Court feels that consecutive sentence is appropriate . . . .

After a review of the record, we determine that the trial court properly sentenced the appellant. This issue is without merit.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE