IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 18, 2007

## STATE OF TENNESSEE v. JEFFERY E. LONG

### Direct Appeal from the Criminal Court for McMinn County
No. 06-017     Amy A. Reedy, Judge

No. E2007-00754-CCA-R3-CD - Filed July 14, 2008

The defendant, Jeffery E. Long, was convicted of aggravated robbery and sentenced to thirteen years as a Range II, multiple offender. On appeal, he argues that the evidence was insufficient to support the verdict and that the trial court erred in three areas: admission of a photographic lineup, failure to grant a mistrial, and failure to require a different jury panel when it was possible some members saw the defendant led into a holding cell in the courthouse prior to trial. After careful review, we conclude that no reversible error exists and affirm the judgment from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Charles R. Hughes, Jr., District Public Defender, and Jeanie L. Wiggins, Assistant Public Defender, for the appellant, Jeffery E. Long.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel W. Harmon, Assistant Attorney General; Robert S. Bebb, District Attorney General; and Paul D. Rush, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The victim testified that he was robbed while putting air in his tire at a closed gas station. The victim testified that the robber approached him from behind and tapped him on the shoulder while the robber's hand was in his pocket giving the appearance that he had a gun. The victim was told he would be killed if he did not give the robber his money. After the victim gave the robber his wallet, which contained $840.00, the robber walked quickly away. The victim left the scene and drove home, where he phoned the police to report the incident.

He testified that he believed the robber was a six foot, six inch or six foot, seven inch black male, who wore blue jeans, a black jacket, and a black hat. He also believed the robber's age to be between twenty-five and thirty-five. The day following the robbery, the victim identified the

defendant from a photographic line-up but asked to see a more recent photograph before making a conclusive identification. He identified the defendant again in the more recent photographic line-up but acknowledged the defendant was the only person pictured wearing a black leather jacket and was the only person in common from both photographic lineups.

Analysis

The issues raised by the defendant fall into two categories: sufficiency of the evidence and trial court error. First, he argues that the evidence presented was legally insufficient to convict him of aggravated robbery. When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. Id. In State v. Grace, the Tennessee Supreme Court stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

Here, the defendant argues that the victim simply described someone other than himself as the perpetrator of the crime. He argues that the physical descriptions did not match up and, therefore, were insufficient to convict him of the crime. The victim described the robber as between six foot, six inches and six foot, seven inches in height. The six foot, six inch victim said that he had to slightly look up at the robber during the robbery despite the fact that the defendant's approximate height is six foot. The victim also testified that he was more certain about his identification of the defendant's face than the defendant's height.

Great weight is given to the jury verdict in a criminal trial; it accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). The defendant has the burden of overcoming the presumption of guilt and has not met his burden in the instant case. His argument of the discrepancy in height has merit but it does not overcome the evidence that the victim made a facial identification of the defendant from different photographic lineups. When considering the victim's description of the defendant in its entirety, it is reasonable that a jury could conclude the defendant committed this offense. Therefore, the defendant is not entitled to relief on this issue.

Next, the defendant argues that the trial court erred in three specific areas. We will analyze each issue separately. Initially, the defendant argues the trial court erred in failing to suppress the photographic line-up used to identify the defendant, because it was unconstitutionally suggestive. The defendant raised the issue in a motion to suppress and, here, argued that his motion should have been upheld.

The factual findings, made by the trial court at the hearing on a motion to suppress, are binding upon this court unless the evidence contained in the record preponderates otherwise. State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001). The prevailing party in the trial court is afforded the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence. Id.

The United States Supreme Court established a two-part test to determine the validity of a pretrial identification in Neil v. Biggers, 409 U.S. 188, 199-200, 93 S. Ct. 375 (1972). First, the court must determine whether the procedure used to obtain the identification was unduly suggestive. Then, if the identification was unduly suggestive, the court must determine, based on the totality of the circumstances, whether the identification is nevertheless reliable. Id.

This court has concluded that the presentation of a photographic spread to a victim or witness, when the suspect is not in the police department, is not unreasonable. State v. Thomas, 780 S.W.2d 379, 382 (Tenn. Crim. App. 1989). Here, the detective testified that he suspected the defendant based on the victim's initial description of the robber. The detective said the victim identified the defendant as the robber in the first photographic line-up on the day following the offense but requested a more recent picture of the defendant. The victim viewed a different photographic line-up eight days after the robbery, which included a more recent picture of the defendant. The victim positively identified the defendant, concluding that he was "sure after looking at the recent picture that this is the right person who robbed me of my $840.00 on 11-23-05."

The factors to be considered in evaluating whether there has been a mistaken identification include: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. Neil v. Biggers, 409 U.S. at 199. Here, the victim testified that he had between thirty and sixty seconds to view the defendant's face during the robbery. The victim was attentive during the offense. The victim was not accurate in his description of the defendant's height and age. He was certain, after viewing the photographic lineups, that the

-3-

defendant was the robber. The photographic identifications did occur close in time to the robbery. Even if we concluded that the photographic line-up was unduly suggestive, the totality of the circumstances surrounding the identification of the defendant suggests that the identification was reliable. The victim was "ninety percent" sure that the first photograph he saw of the defendant was a correct identification of the man who robbed him the previous night. The victim had an independent recollection of the robber, separate from the photographic line-up, and would have been able to identify him at trial even if the photographic line-up was excluded. The defendant is not entitled to relief on this issue.

Next, the defendant argues that the trial court erred in failing to grant a mistrial based on the State's redirect examination of the victim. Specifically, he argues that the State improperly vouched for the credibility of the victim during redirect examination. He contends that the remarks were made to rehabilitate the victim's trial testimony about a critical area of dispute and that these remarks constitute a mistrial.

The determination of whether to grant a mistrial rests within the sound discretion of the trial court. State v. Smith, 871 S.W.2d 667, 672 (Tenn. 1994). The reviewing court should not overturn that decision absent an abuse of discretion. State v. Reid, 91 S.W.3d 247, 279 (Tenn. 2002). The burden of establishing the necessity for mistrial lies with the party seeking it. State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). No abstract formula should be mechanically applied in making this determination, and all circumstances should be taken into account. State v. Mounce, 859 S.W.2d 319, 322 (Tenn. 1993).

The defendant argues that the State was "bolstering" the victim's credibility by vouching for his truth or veracity. The State contends, and we agree, that it did nothing more than ask a leading question. During the State's redirect examination of the victim, the following exchange occurred:

State:      Just some real quick questions. You remember we talked last night on the phone. Right.
Witness:    Yes, sir.
State:      And do you remember that I told you the defendant is not 6'6.
Witness:    Yes.
State:      Do you remember that?
Witness:    Yes.
State:      Do you remember that I told you he's not 6'7?
Witness:    Yes, sir.
State:      And do you remember that I told you that I wanted you to make a fair identification.
Witness:    Yes.
State:      And I didn't want you to say anything —

The defendant objected, and the trial court sustained the objection as to leading. Our review reflects that the leading question does not appear to have bolstered the victim's credibility. In fact, as the State suggests, it demonstrated that the victim was incorrect in his description of the robber's height, which is precisely what the defendant wanted the jury to understand. Nevertheless, the exchange did not warrant a mistrial, because it was not prejudicial and did not affect the jury's verdict.

-4-

The final area argued by the defendant, that the trial court erred, addresses the possibility that potential jurors may have seen him in the custody of law enforcement. The defendant contends that he is entitled to a new trial because potential jurors might have seen him in the physical custody of the police when he was being placed in a holding cell inside the courthouse. An officer with the McMinn County Sheriff's Department testified that he transported the defendant through the courthouse into the building's holding cell to await trial. He testified that approximately ten people he assumed to be prospective jurors could have seen him escorting the defendant to the holding cell. However, he also testified that the defendant wore no visible shackles or physical restraints and was dressed in plain clothes. He also testified that the door to the holding cell looks like a "normal door," similar to the doors of the witness rooms, and opens outward. Therefore, anyone who might have seen the defendant go through the door would not have necessarily known there was a holding cell beyond the door.

Our review reflects that the defendant has not presented any evidence to demonstrate that he was prejudiced by the possibility of prospective jurors seeing him prior to trial. It is unclear from the record whether any of the jurors were in the hallway. Quite simply, the defendant has not shown that a potential juror was tainted because he or she saw the defendant in custody.

Conclusion

Based on the foregoing and the record as a whole, we conclude that no reversible error exists and affirm the judgment from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE